IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-494-BO

| | | |
|---|---|---|
| MICHAEL LAWRENCE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| DEBORAH HANSEN, | ) ) | |
| Defendant. | ) ) | |

This cause comes before the Court on defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [DE 44]. This matter has been fully briefed and is ripe for adjudication. For the following reasons, defendant's motion is granted.

## BACKGROUND

The events precipitating this case began with a traffic stop in Apex, North Carolina, on September 24, 2012. Defendant, an Apex Police Department officer, stopped plaintiff's vehicle because she observed that plaintiff's vehicle registration had expired 11 months before. [DE 46-13 at ¶ 4]. When defendant spoke with plaintiff and inquired regarding his expired Colorado registration, plaintiff told defendant that he had moved to North Carolina some months before and had not renewed his registration in Colorado, nor registered his vehicle in North Carolina. [DE 46-13 at ¶¶ 5–8]. Defendant issued a citation to plaintiff for: (1) unlawfully operating a motor vehicle that displayed a registration he knew to be expired, in violation of N.C. Gen. Stat. § 20-111(2), and (2) operating a motor vehicle without having registered the vehicle with the North Carolina Division of Motor Vehicles, such vehicle being one required to be registered, in violation of N.C. Gen. Stat. § 20-111(1). [DE 46-13 at ¶ 10 and pp. 5–9].

When defendant ran plaintiff's driver's license information through the NCIC database, she discovered an outstanding warrant for his arrest. Plaintiff was a wanted person and the state of Colorado had requested full extradition from participating states nationwide, should plaintiff be apprehended. [DE 46-13 at ¶¶ 11–12 and p. 8; DE 46-16]. Defendant confirmed the warrant with The Town of Apex Emergency Communications Department. [DE 46-13 at ¶¶ 13–14 and p. 8].

Plaintiff admits that there was an outstanding Colorado warrant against him for probation violations. [DE 4 at ¶ 8]. Consequently, defendant arrested plaintiff and took him to the Wake County detention facility and disclosed the NCIC hit to Magistrate B. Nickels, who took copies of the paperwork and used the NCIC information to complete the document entitled "Fugitive Affidavit." [DE 46-13 at ¶ 15]. Magistrate B. Nickels then issued a Warrant for Arrest for Fugitive for plaintiff and set plaintiff's bond for $200,000. [DE 46-10]. During a hearing the next day, plaintiff refused extradition to Colorado. *Id.* Plaintiff's court-appointed defense counsel moved for a reduction in his bond, which was denied. [DE 46-10 and 46-11].

A Waiver of Extradition signed by plaintiff in Colorado on August 18, 2010, as a condition of his probation, was upheld, and the Wake County Superior Court issued an order that plaintiff be turned over to agents of the state of Colorado. [DE 46-12]. Plaintiff states that he was extradited to Denver County jail on or about November 9, 2012, where he was able to post bond on or about November 11, 2012. [DE 4 at ¶¶ 20–21]. Plaintiff, proceeding *pro se*, then brought the instant suit against defendant, the City of Apex Police Department, and John Letteney on November 6, 2015, seeking damages arising out of alleged Fourth, Eighth, and Fourteenth Amendment violations. [DE 4].

2

Defendant City of Apex Police Department filed a motion to dismiss on January 7, 2016, [DE 18], which was granted by the Court on March 18, 2016. [DE 21]. On August 29, 2016, the remaining defendants, John Letteney and defendant, filed a partial motion for judgment on the pleadings, [DE 20], which was granted by the Court on December 21, 2016. [DE 32]. As a result of that motion, all claims against defendant Letteney and all Eighth Amendment claims against defendant were dismissed. *Id.*

On February 27, 2017, defendant filed the instant motion for summary judgment. [DE 44]. Plaintiff responded, [DE 51], and defendant filed a reply, [DE 55].

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative

or conclusory allegations, however, will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

In order to state a claim for violation of a constitutionally protected right under 42 U.S.C. § 1983, a plaintiff must allege "that some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

In his complaint, plaintiff claims generally that Corporal Hansen lacked probable cause for his arrest, caused a deprivation of his constitutional rights, and that her training was insufficient. All challenges to the setting or amount of plaintiff's bail were dismissed by this Court by its previous order dismissing all Eight Amendment claims made by plaintiff. Thus, the only remaining claims are under the Fourth Amendments and concern whether defendant had probable cause to justify the arrest of plaintiff and whether her conduct during that arrest in filling out and presenting a Fugitive Affidavit before the Wake County Court violated plaintiff's constitutional rights.

The temporary detention of a person during a vehicle stop constitutes a seizure for purposes of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809 (1996). "Because a traffic stop is more analogous to an investigative detention than a custodial arrest, [courts] treat a traffic stop, whether based on probable cause or reasonable suspicion, under the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011), *as amended* (Aug. 2, 2011). Under *Terry*, a court must examine a traffic stop on two grounds—first, to determine whether it was justified at its inception and, second, to determine

whether the police officer's actions after the stop were reasonably related to the circumstances which justified the stop. *Id.* Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 8010. "Observation of any traffic violation, no matter how minor, gives an officer probable cause to stop the driver." *United States v. Jones*, 364 F. App'x 834, 835 (4th Cir. 2010) (citation omitted).

An officer may also "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). Whether an officer had a reasonable articulable suspicion that criminal activity was afoot is an objective inquiry which requires a court to consider the totality of the circumstances. *Id.* at 8; *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008).

Whether assessing whether the stop of plaintiff was justified under the reasonable articulable suspicion standard or even under the more stringent probable cause standard, the undisputed evidence clearly shows that defendant's stop of plaintiff was justified. Defendant observed that the registration on plaintiff's license plate was almost a year out of date. When defendant inquired about plaintiff's registration, plaintiff admitted that his Colorado registration was almost a year out of date, and that he had moved to North Carolina, but had not attempted to

5

register his vehicle in North Carolina. It is unlawful in North Carolina to knowingly operate a vehicle on the public highways that does not display a current registration plate and to knowingly display a registration number plate that the operator knows is expired, and each offense constitutes a Class 3 misdemeanor. N.C. Gen. Stat. § 20-111(1)-(2) (2016). Plaintiff has not presented or established any evidence that his registration in Colorado or North Carolina was current or that disputes what transpired at the traffic stop. Therefore, the undisputed facts show that defendant was clearly justified in making a traffic stop of plaintiff.

Plaintiff next contends that defendant violated his rights under the Fourth Amendment when she arrested him. The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, (1983); *see also Mazuz v. Maryland*, 442 F.3d 217 (4th Cir. 2006) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken."). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, [she] may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (*quoting Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). "In evaluating objective reasonableness, what the officer observed is highly relevant; [her] subjective beliefs are not." *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 607 (E.D.N.C. 2009).

Under this standard, defendant's subjective beliefs are not relevant to the consideration of whether, objectively, she was justified in effecting a seizure of plaintiff. Again, the evidence clearly shows that she was justified in doing so. Plaintiff had committed, and admitted to, a traffic violation in defendant's presence. That alone is enough to justify the arrest of plaintiff, because a warrantless arrest for even a minor traffic offense does not violate an arrestee's Fourth Amendment rights. *Atwater*, 532 U.S. at 354. Moreover, defendant searched for plaintiff's information in law enforcement electronic databases, which alerted defendant that plaintiff was a wanted person in Colorado with full extradition back to that state and that a warrant existed for his arrest. Plaintiff has conceded that a warrant was issued for his arrest in Colorado. Finally, under the terms of the Uniform Criminal Extradition Act, which was adopted by North Carolina by N.C. Gen. Stat. §§ 15A-721 *et seq.*, North Carolina is required to comply with the demands of other states to return to them persons charged there with felonies. N.C. Gen. Stat. § 15A-722. Any peace officer has the same authority to arrest a person subject to a warrant issued by another state to seize and deliver him to the duly-authorized agent of the other state. N.C. Gen. Stat. § 15A-728. Plaintiff has conceded that he was charged with a crime in Colorado, that a facially-valid warrant was issued for him in Colorado, and that he is the person referred to in the warrant. For all of these reasons, defendant's arrest of plaintiff was clearly supported by probable cause and justified under the Fourth Amendment.

Moreover, even should a violation of plaintiff's Fourth Amendment rights be found during the stop or arrest, the evidence shows that that plaintiff's claims against defendant in her individual capacity would be barred by qualified immunity. Qualified immunity shields government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see*

*also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Reichle v. Howards*, 566 U.S. 658 (2012). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010) (*citing Saucier v. Katz*, 533 U.S. 194 (2001)). Again, the facts are construed in the light most favorable to plaintiff. *Id.*

Plaintiff argues that, because defendant made several errors in filling out the Fugitive Affidavit Form, that her actions amount to "plain incompetence" and were in violation of established law. Plaintiff further argues that the mistaken information in the Fugitive Affidavit caused his Fourth Amendment rights to be violated when bond was imposed at a high amount and when he was held in jail until his extradition to Colorado. As to this second argument, relating to the bond amount and his holding in jail, plaintiff has identified no authority recognizing such a claim to be actionable under the Fourth Amendment, and his claims under the Eighth Amendment for excessive bail have already been dismissed by prior order of this Court. As to plaintiff's first argument, that defendant's actions were plainly incompetent and in violation of established law, the Court finds that the evidence clearly shows that defendant is entitled to qualified immunity.

As discussed above, defendant clearly had probable cause to arrest plaintiff, and there is no evidence obviating this fact. Although several parts of the Fugitive Affidavit Form were filled out incorrectly, defendant still had probable cause to arrest plaintiff for his traffic violation and under N.C. Gen. Stat. § 15A-733, which allows for the arrest of persons who have been charged out-of-state with a crime and then fled, as well as those who "having been convicted of a crime

in that state and having escaped from confinement, or having broken the terms of his bail, probation or parole, and is believed to be in this State." N.C. Gen. Stat. § 15A-733. Plaintiff admits that he was in violation of his parole and that an arrest warrant had been issued in Colorado for that reason. Whether the defendant stated in the Fugitive Affidavit that the reason for the arrest was plaintiff's underlying conviction committed in Colorado for attempt to influence a public servant, forgery, and offering a false instrument, or whether the reason listed for the arrest was plaintiff's probation violation, which was ordered by Colorado as a result of the above conviction, either way the reason listed in the Fugitive Affidavit immaterial to considering whether defendant had probable cause to arrest plaintiff. Plaintiff was a fugitive under the plain terms of N.C. Gen. Stat. § 15A-733, and had also committed a crime within defendant's presence. Any mistakes on the Fugitive Affidavit, because they did not obviate this probable cause, are excused under qualified immunity which "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) (*citing Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

The only exception which would allow suit in the case of alleged "plain incompetence" where an arrest warrant has issued is if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* at 547 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Again, defendant issued the Fugitive Affidavit Form, which was approved by a reviewing magistrate, under circumstances in which a reasonable officer would conclude that there was probable cause to support the arrest.

Moreover, officers complying with a demand for extradition are subject to an additional presumption of good faith and exemption from liability, if the officer is relying upon facially-valid extradition paperwork, even if an extradited fugitive's extradition rights were violated.

9

*Godfrey v. Washington Cty., VA, Sheriff*, Civil Action No. 7:06-cv-00187, 2007 WL 2405728 at *5–6 (W.D. Va. 2007). Plaintiff, whose claims are based upon the manner in which the Fugitive Affidavit was completed, has not established that defendant violated clearly established law regarding his extradition rights. Instead, defendant had an objectively reasonable basis to believe that plaintiff had a Colorado warrant outstanding for his arrest, and that she was required to detain him so that his extradition to Colorado could be achieved. All of plaintiff's arguments that defendant is not entitled to qualified immunity are unavailing.

Because the evidence shows that the stop and arrest were not objectively unreasonable, and were supported by probable cause for a variety of reasons, defendant is entitled to qualified immunity in her individual capacity as plaintiff cannot establish that a violation of his Fourth Amendment rights occurred. Defendant's actions were objectively reasonable in light of clearly established legal principles, *Harlow*, 457 U.S. at 818, and plaintiff's conclusory assertions that defendant actions were intentionally malicious or "imbecilic" are not supported by the evidence and entitled to little weight. Summary judgment in defendants' favor is therefore appropriate on plaintiff's Fourth Amendment claims against defendant in her individual capacity.

Plaintiff also brought claims against defendant in her official capacity. When a plaintiff names a government official in her official capacity, the plaintiff is seeking to recover compensatory damages form the government body itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). There is no respondeat superior liability under § 1983; rather, in order to hold a municipality liable for a violation of a person's constitutional rights, a plaintiff must demonstrate that the City was aware of the constitutional violation and either "participated in, or otherwise condoned, it." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Municipal liability only results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell* 436 U.S. at 694. Liability exists only when the municipality and its officials take action under an official policy that violates another individual's constitutional rights, and "[t]he challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Instead, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* Additionally, one incident alone is not enough to allege or establish liability on the part of a municipality for a violation of constitutional rights. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). Instead, a history or pattern of widespread abuse must typically be shown. *Id.*

Plaintiff's claims against defendant in her official capacity fail for several reasons. First, as discussed above, defendant did not violate plaintiff's constitutional rights, and so there can be no municipal liability in fact, even should the government body that supervised defendant be found to have had an unconstitutional policy, practice or custom. *Heller v. City of Los Angeles*, 475 U.S. 796 (1986); *see also Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990). Second, there is not a single piece of evidence in the record demonstrating that there was a custom or practice of violating constitutional rights by the supervising governmental body that was "widespread, pervasive, and so permanent and well settled as to constitute a custom or usage with the force of law." *Greensboro Fire Fighters v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995). Plaintiff's conclusory allegations defendant's training was insufficient is not established by any evidence, and custom or practice may not arise out of a single incident. *Monell*, 436 U.S. at 691;

11

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Therefore, summary judgment in defendant's favor on plaintiff's official capacity claims is warranted.

In sum, the undisputed evidence in this matter demonstrates that summary judgment in defendant's favor is merited for all of plaintiff's claims. Therefore, defendant's motion for summary judgment will be granted and this matter will be closed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 44] is GRANTED. The Clerk is DIRECTED to close the case.

SO ORDERED, this 25 day of May, 2017.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE